THE STATE OF OHIO, APPELLANT, *v.*
PURDON, APPELLEE.

(No. CA84-08-007—Decided June 17, 1985.)

*Joseph M. Worley,* assistant prosecuting attorney, for appellant.
*Michael E. Cassity,* for appellee.

*Per Curiam.* This cause came on to be heard upon the appeal from the County Court of Brown County, Ohio.

On February 19, 1984, defendant-appellee, George B. Purdon III, was arrested and charged with driving left of center in violation of R.C. 4511.25 and operating a motor vehicle while under the influence of alcohol and/or drugs of abuse in violation of R.C. 4511.19(A)(1). An intoxilyzer test was administered to Purdon and the result thereof was .05 percent, which is below the statutory presumption set forth in R.C. 4511.19(A)(3).[1] Purdon consented to

---

[1] R.C. 4511.19 states in part as follows:
"(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:
"* * *

"(3) The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;"

providing a urine sample. The urine specimen was analyzed and found to contain controlled substances.[2] The entire urine specimen was consumed in the testing and analysis process.

Purdon filed a plea of not guilty to both charges and requested a trial by jury. Subsequent to his plea, Purdon filed a motion to suppress the results of the urine sample analysis on the basis that he was not given an opportunity to have his own independent analysis made of the urine specimen or, in the alternative, he did not have the opportunity to have an independent analyst present at the testing performed by the state's analyst. The trial court, after a hearing on the matter, granted the motion to suppress the results of the urine specimen analysis. The state now brings a timely appeal to this court.

The sole assignment of error presented by the state is as follows:

"The trial court erred in granting appellee's motion to suppress the results of a urine sample analysis from evidence."

The issue as presented for review and argument by the state is as follows:

"Does the due process clause of the Fourteenth Amendment require the State of Ohio to supply to the defendant a portion of his urine sample or allow an independent analyst to be present at the testing performed by the analyst for the State in order to introduce the urine analysis at the trial?"

Purdon relies on R.C. 2925.51(E) to support his position that a defendant is entitled to have the state preserve the urine sample or, if the urine sample will be totally consumed in the state's testing, to have an independent analyst present at the testing performed by the state. R.C. 2925.51(E) states as follows:

"(E) Any person who is accused of a *violation of this chapter [R.C. Chapter 2925] or of Chapter 3719. of the Revised Code* is entitled, upon written request made to the prosecuting attorney, to have a portion of the substance that is the basis of the alleged violation preserved for the benefit of independent analysis performed by a laboratory analyst employed by the accused person, or, if he is indigent, by a qualified laboratory analyst appointed by the court. Such portion shall be a representative sample of the entire substance that is the basis of the alleged violation and shall be of sufficient size, in the opinion of the court, to permit the accused's analyst to make a thorough scientific analysis concerning the identity of the substance. * * * If the prosecuting attorney determines that such a sample portion cannot be preserved and given to the accused's analyst, the prosecuting attorney shall so inform the accused person, or his attorney. In such a circumstance, the accused person is entitled, upon written request made to the prosecuting attorney, to have his privately employed or court appointed analyst present at an analysis of the substance that is the basis of the alleged violation, and, upon further written request, to receive copies of all recorded scientific data that result from the analysis and that can be used by an analyst in arriving at conclusions, findings, or opinions concerning the identity of the substance subject to the analysis." (Emphasis added.)

R.C. 2925.51(E) is not applicable to the case at bar. The legislature specifically states that R.C. 2925.51(E) applies to violations of R.C. Chapters 2925 or 3719. Purdon was charged with a violation of R.C. Chapter 4511. There is no statutory right conferred upon defendants charged with a violation of

---

[2] The toxicology report indicated the following substances tested as positive in the urine sample: .09 of ethanol; amphetamine (Drug Screen I, IV); cannabinoids, and phentermine.

R.C. Chapter 4511 to have a urine sample preserved or an independent analyst present at the state's testing of the urine sample.

Therefore, since there is not any specific statutory authority applicable, the issue we must address is whether due process requires the state to preserve a urine sample or have a defendant's independent analyst present at the testing conducted by the state.

There are no reported cases in Ohio on this issue. However, the United States Supreme Court in *California* v. *Trombetta* (1984), ____ U.S. ____, 81 L. Ed. 2d 413, 423, held that "* * * the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce breath-analysis tests at trial." The court analyzed the issue in terms of fundamental fairness and the criminal defendant's right to present a complete defense by access to evidence of an exculpatory nature in the hands of the prosecution. The court stated at 422:

"* * * Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see *United States* v. *Agurs,* 427 U.S., at 109-110, * * * evidence must *both* possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. * * *" (Emphasis added.)

The issue and facts in *Trombetta* are analogous in many respects to the issue and facts before us in the case at bar. The prosecution, as in *Trombetta,* did not destroy the urine sample in a calculated effort to destroy evidence or circumvent the disclosure requirement.

Although the court in *Trombetta* discussed the accuracy and reliability of the intoxilyzer results, such accuracy and reliability were not determining factors in the court's holding because the court held that even if the intoxilyzer results were assumed to be inaccurate, the defendant had alternative means of demonstrating his innocence such as impeaching the machine's reliability; raising the improper administering of the test; or other factors that may have interfered with the test results. In the case at bar, it is not readily apparent that the urine sample possessed an exculpatory value before the evidence was consumed by the testing. However, even assuming that the urine sample had an exculpatory value present before testing or assuming that the results were inaccurate, Purdon was able to obtain comparable evidence by other reasonably available means to demonstrate his innocence. See *Trombetta, supra.* First, the arresting officer informed Purdon that he had a right to have an additional test of his own and that the officer would take Purdon to the hospital to have the tests administered. Purdon declined to do so. Second, Purdon may challenge the accuracy and reliability of the testing procedures utilized by the state. He can also present evidence of the proper versus improper conducting of the test or whether statutory procedures were followed. Purdon may also bring forth any other relevant factors that bear upon the weight and probative value of the test results.

Therefore, we conclude that under the facts presented in the case at bar, as discussed above, Purdon was not denied due process under the federal Constitution or the Ohio Constitution.[3] Nor as discussed above is there any statutory authority requiring the preservation of a

---

[3] Fourteenth Amendment to the United States Constitution; Section 16, Article I, Ohio Constitution.

urine sample or that an independent analyst be present at the testing. As pointed out by the court in *Trombetta* at 423-424, fn. 12, the legislature, if it so desired, could have adopted "* * * more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal Constitution." The legislature has not seen fit to impose such safeguards for violations of R.C. Chapter 4511, as it has done for violations of R.C. Chapters 2925 and 3719, and we will not impose more rigorous safeguards in the absence of legislative directive.

Accordingly, the trial court improperly granted the motion to suppress and the state's sole assignment of error is hereby sustained.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, reversed and this cause is remanded for further proceedings according to law and not inconsistent with this decision.

*Judgment reversed*
*and cause remanded.*

HENDRICKSON, P.J., KOEHLER and CASTLE, JJ., concur.

CASTLE, J., retired, of the Twelfth Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.