The STATE of Ohio, Appellee,

v.

ESTEP, Appellant.

[Cite as *State v. Estep* (1991), 73 Ohio App.3d 609.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–566.

Decided June 20, 1991.

*Ronald J. O'Brien,* City Attorney, *James J. Fais,* City Prosecutor, and *Thomas K. Lindsey,* for appellee.

*Phillip D. Cameron,* for appellant.

PEGGY BRYANT, Judge.

Defendant-appellant, Jeffrey A. Estep, appeals from a judgment of the Franklin County Municipal Court finding him guilty of driving while under the influence of alcohol in violation of R.C. 4511.19(A)(4).

On January 24, 1990, defendant was arrested and charged not only with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1), but also with speeding, weaving, disorderly conduct and drug abuse. During the arrest, defendant provided a urine sample to police for drug and alcohol testing. Tests performed on the sample the following day yielded a blood-alcohol concentration of .31 of one gram by weight of alcohol per hundred milliliters of urine, well in excess of the .14 limit prescribed by R.C. 4511.-19(A)(4).

Thereafter, the remainder of defendant's urine sample was refrigerated and preserved pursuant to regulation for a period of four weeks. On February 26, 1990, the close of the retention period, the sample was marked for destruction during the following week.

Based on the results of the urine test, on March 6, 1990, defendant was charged with the additional *per se* charge under R.C. 4511.19(A)(4). On March 16, 1990, defendant formally requested the sample for the purpose of conducting comparable tests, but he was informed of its prior destruction.

Defendant's pretrial motion to suppress the results of the urine test was denied, as was defendant's renewed motion to suppress. At trial, defendant entered a plea of no contest on the *per se* charge, and the trial court found defendant guilty. Defendant appeals therefrom, asserting the following errors:

"1. The trial court erred in overruling defendant's motion to suppress evidence of appellant's urine alcohol test.

"2. The court erred by finding the defendant guilty upon the statement of the prosecution, testimony of the prosecution's witness and the evidence submitted.

"3. The trial court erred in refusing to admit documents supplied by defendant's expert Dr. Alfred Staubus, as well as testimony of Dr. Staubus."

In his first assignment of error, defendant contends that the state erred in overruling his motion to suppress the urine test results. Specifically, defendant contends that the state's failure to preserve material exculpatory evidence denied him due process; and being constitutional in nature, defendant's argument was not waived by his no contest plea. See Traf.R. 11(G);

Crim.R. 12(H); *In re Green* (1982), 4 Ohio App.3d 196, 198, 4 OBR 300, 301, 447 N.E.2d 129, 130.

Virtually the same argument was considered in *State v. Purdon* (1985), 24 Ohio App.3d 217, 24 OBR 395, 494 N.E.2d 1154, where Purdon was arrested and charged with driving left of center and driving a motor vehicle under the influence of alcohol. Purdon provided a urine sample, which was found to contain a controlled substance, but the entire urine sample was consumed in the testing process. Purdon filed a motion to suppress the test results, contending that he was unfairly denied an opportunity to have independent analysis performed. The court in *Purdon* denied the motion, holding that the Due Process Clause of the Fourteenth Amendment does not require the prosecution to preserve urine samples for independent analysis unless the samples possess an exculpatory value that is apparent before the sample is destroyed, and the defendant is unable to obtain comparable evidence by other reasonably available means. *Id.* at 219, 24 OBR at 396, 494 N.E.2d at 1156.

In so holding, the court in *Purdon* relied exclusively on the United States Supreme Court decision in *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, wherein the Supreme Court rejected a due process challenge to California's policy of not preserving breath samples used as evidence in drunk driving prosecutions. In *Trombetta*, the United States Supreme Court noted:

" * * * Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. * * * To meet this standard of constitutional materiality, * * * evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. * * * " (Footnote omitted.) *Id.* at 488–489, 104 S.Ct. at 2534, 81 L.Ed.2d at 422.

Application of *Purdon* and *Trombetta* herein requires the same result. The original urine test indicated that defendant was driving in violation of R.C. 4511.19(A)(4); and we are unable to find evidence herein that the sample possessed an exculpatory value.

■ Nevertheless, even if we could conclude that the urine sample possessed apparent exculpatory value and that defendant had no other comparable evidence reasonably available, any doubt about defendant's constitutional argument was resolved by the Supreme Court in *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. *Youngblood* held that " * * * unless a criminal defendant can show bad faith on the part of the

police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289.

While test results were available to police on January 26, 1990, and defendant was not charged with the *per se* violation until March 6, 1990, we are unable to conclude that such tardiness constitutes bad faith under *Youngblood.* No evidence suggests that the police manipulated the timing of the *per se* charge, or that defendant requested the evidence only to have the police deliberately fail to respond or otherwise conceal the existence of potentially exculpatory evidence. Further, defendant had full access to the urine sample for the four- or five-week period immediately after his arrest, and could have requested the sample prior to its destruction. Moreover, although defendant was not originally charged with the *per se* violation, he was charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1). Since defendant's urine-alcohol content is relevant to his guilt under that charge, defendant was aware of the potential need to have the urine sample independently tested for sometime prior to its destruction.

In the final analysis, the failure of the state to preserve the urine sample past the period required by policy did not deny defendant of due process of law. Defendant's first assignment of error is overruled.

In his second and third assignments of error, defendant asserts the trial court erred in finding him guilty on the allegations in the traffic ticket, and in indicating its refusal to allow certain evidence at trial on defendant's charges. However, by his plea of no contest, defendant waived the errors claimed in assignments two and three.

A plea of no contest constitutes a waiver of the right to a trial by jury, the right to confront witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. *State v. Pernell* (1976), 47 Ohio App.2d 261, 265, 1 O.O.3d 318, 319, 353 N.E.2d 891, 892. Under Traf.R. 10(B)(2), a plea of no contest " * * * is an admission of the truth of the facts alleged in the complaint * * * [.]" Accordingly, by his no contest plea defendant admitted each of the state's allegations against him, including the allegation that his urine sample tested at more than twice the concentration of urine alcohol permitted by R.C. 4511.19(A)(4).

This case is distinguishable from the recent Supreme Court decision in *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 573 N.E.2d 32, wherein defendant's challenge to the admissability of the test results was premised on ODH's failure to substantially comply with the established blood-alcohol testing procedures set out in Ohio Adm.Code 3701–53–03(A)(2). The Supreme Court held in *Kretz* that a pretrial motion to suppress results of a blood-alcohol test,

based solely on statutory and administrative infractions, was preserved for review following a plea of no contest.

By contrast, defendant herein contends that, despite substantial compliance with Ohio Adm.Code 3701–53–03, ODH deviated from its normal practice of running tests at two different calibration levels. Such a deviation from procedure affects the credibility, not the admissibility, of the results, particularly since the test results showed a urine-alcohol concentration at more than twice the legal limit. Consequently, the test results in this case, unlike those in *Kretz,* still provide an evidentiary basis for admitting the test and for a finding of guilt regardless of the outcome of the motion. See *Kretz, supra,* 60 Ohio St.3d at 4, 573 N.E.2d at 34.

Accordingly, defendant's second assignment of error pertaining to the court's finding of guilt based solely upon the results of the urine-alcohol test contained in the traffic ticket is overruled.

 Similarly, since no trial took place, the evidentiary issues raised in defendant's third assignment of error are waived. An appellate court need not review the propriety of a tentative, discretionary, interlocutory ruling on an evidentiary issue that is expected to arise at trial, unless the claimed error is preserved by a timely objection when the issue is actually reached at trial. See *State v. Grubb* (1986), 28 Ohio St.3d 199, 28 OBR 285, 503 N.E.2d 142; *State v. Leslie* (1984), 14 Ohio App.3d 343, 14 OBR 410, 471 N.E.2d 503. As discussed in connection with defendant's second assignment of error, substantial compliance with Ohio Adm.Code 3701–53–03 was demonstrated and the court's subsequent refusal to consider evidence concerning the reliability of the single calibration test was waived by defendant's no contest plea. Furthermore, expert testimony designed to impeach the general reliability of Ohio's legislatively determined urine-alcohol testing procedures is clearly inadmissible. See *State v. Vega* (1984), 12 Ohio St.3d 185, 12 OBR 251, 465 N.E.2d 1303. Accordingly, defendant's third assignment of error is overruled.

Having overruled each of defendant's assignments of error, we hereby affirm the judgment of the trial court.

*Judgment affirmed.*

BOWMAN, P.J., concurs.

GREY, J., concurs separately.

LAWRENCE GREY, J., of the Fourth Appellate District, sitting by assignment.

GREY, Judge, concurring séparately.

I concur in the judgment and opinion because it correctly decides this case in terms of the constitutional issue involved. I concur separately because mere resolution of the constitutional issue does not resolve the underlying problem of the evidentiary value of scientific tests. Simply put, scientific tests must be both constitutional and reliable.

The cardinal point about scientific evidence is that if we are to use it as a fact-finding tool, we can only use it within the terms of scientific discipline. In science, all test results are questionable and to be valid must be able to be replicated, and must be available to others who would contest the findings. Scientific tests are reliable because the results are always subject to retesting and because they can always be checked by an independent authority. Here we are adopting the results of scientific testing without also adopting the controls which make the discipline reliable as a factfinder. The opportunity for independent testing is a *sine qua non* of science.

I think the Supreme Court realized this in *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, where it held that failure to keep the breath sample was not constitutional error. The Supreme Court noted, at 490–491, 104 S.Ct. at 2535, 81 L.Ed.2d at 423, fn. 11, that the defendants "* * * could also have protected themselves * * * [by requesting blood or urine testing], because the State automatically would have preserved urine and blood samples for retesting * * *."

The Supreme Court, while holding that not preserving the breath samples did not reach constitutional proportions, said:

"State *courts* and legislatures, of course, remain free to adopt more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal Constitution. * * *" (Emphasis added.) *Id.* at 491, 104 S.Ct. at 2535, 81 L.Ed.2d at 423.

If we are going to rely on scientific testing, then we are going to have to stop thinking like lawyers and arriving at conclusions such as this: since evidence was tested once by the state and found by its expert to be inculpatory, it loses its character as potentially exculpatory evidence. This is a dubious presumption, since it is based on the idea that all scientific tests are always accurate. They are not and, like every other human endeavor, are subject to human error.

In *Banks v. Fed. Aviation Administration* (C.A.5, 1982), 687 F.2d 92, the court noted the difficulty of obtaining a just result where samples used for testing are not preserved. While *Banks* is a civil case and was decided before *Trombetta,* its reasoning on laboratory testing applies to all such cases. In

*Banks,* two air traffic controllers gave urine samples which were tested and found to contain traces of cocaine. The samples were then destroyed. The court noted the evidentiary problem:

"* * * The laboratory tests here were the *only* meaningful evidence resulting in the discharges. The accuracy of those tests, including the possibility that the samples were mixed-up, damaged, or even inaccurately tested, was the likely determinant of the entire case. Indeed, challenging the laboratory reports was probably the only way the controllers could succeed in their appeal.

"The opportunity to cross-examine the laboratory director falls far short of substituting for the samples themselves. He obviously would be a highly antagonistic witness in any challenge of the laboratory results. But, as Davis states in his Administrative Law Treatise, 2d ed., § 12:1: 'A party whose interest is protected by due process is entitled to opportunity for a trial-type hearing on disputed adjudicative facts, *except when inspection or testing is deemed a better method for finding the disputed facts.* * * *' *Id.* at 406 (emphasis added). The reliance here was upon a laboratory test. A laboratory challenge of that test was its only effective counter." *Banks,* 687 F.2d at 94–95.

In *State v. Purdon* (1985), 24 Ohio App.3d 217, 24 OBR 395, 494 N.E.2d 1154, the court declined the Supreme Court's suggestion to act as a court and held that it was up to the legislature to regulate scientific evidence:

"* * * As pointed out by the court in *Trombetta* [467 U.S. at 491–492, fn.12, 104 S.Ct. at 2535–2536, fn.12, 81 L.Ed.2d] at 423–424, fn. 12, the legislature, if it so desired, could have adopted ' * * * more rigorous safeguards governing the admissibility of scientific evidence than those imposed by the Federal Constitution.' The legislature has not seen fit to impose such safeguards for violations of R.C. Chapter 4511, as it has done for violations of R.C. Chapters 2925 and 3719, and we will not impose more rigorous safeguards in the absence of legislative directive." *Purdon,* 24 Ohio App.3d at 220, 24 OBR at 397, 494 N.E.2d at 1157.

It has always been the province of the courts to require that evidence be competent, and I would disassociate myself from the implication that the courts cannot act without direction from the legislature.

Finally, I would like to make one point which seems to have been lost in all of the cases on this question—a practical point. The rule we are following here cannot work only to the detriment of innocent people. As is usually pointed out, the various tests are probably accurate and denying a defendant the chance for independent testing is not much of a handicap because the independent test would only confirm the state's test. This is true, and in the

ordinary case where the defendant knows he has had too much to drink, a demand for an independent test is unlikely. But where the defendant is innocent, where he is the unfortunate victim of some testing error, where the defendant is most likely to request a test, the denial of independent testing by destruction of the sample can result only in unsafe and unsure convictions.

I do not believe we can make our streets safer by convicting innocent people, and concur separately to make that point.