**The STATE of Ohio**

v.

**WILLIAMS.**

Court of Common Pleas of Ohio,
Lucas County.

No. CR97–3340.

Decided July 8, 1998.

*Julia Bates,* Lucas County Prosecuting Attorney, *J. Christopher Anderson, Robert Clark* and *Dawn Franks,* Assistant Prosecuting Attorneys, for the state.

*Zaner & Cimerman* and *Lorin J. Zaner,* for defendant.

FREDERICK H. MCDONALD, Judge.

This case is before the court on various pretrial motions filed by the defendant, Theodore A. Williams, and by the state of Ohio. The defendant has filed a motion to suppress and three motions to suppress and/or motions *in limine* to prevent the results of a blood-alcohol test of defendant from being admitted into evidence at trial. The state of Ohio has filed a motion *in limine* to prohibit testimony and evidence relating to certain out-of-court tests conducted by defendant. For the reasons that follow, I find that the motions are not well taken and must be ordered denied.

I

The indictment in this case charges the defendant with four counts of involuntary manslaughter in violation of R.C. 2903.04, four counts of aggravated vehicular homicide in violation of R.C. 2903.06, and one count of aggravated vehicular assault in violation of R.C. 2903.08. According to the bill of particulars, all nine counts of the indictment involve a motor vehicle collision that occurred on November 1, 1997, between a car driven by the defendant and one containing five members of the Scott family. Four members of the family were killed and the fifth was injured. The bill of particulars charges as to the first four counts that the defendant caused the deaths of Tyrone Scott, Susan Scott, Rachel Scott, and Andrew Scott, as a proximate result of his committing or attempting to commit the misdemeanor offense of driving under the influence of alcohol in violation of R.C. 4511.19. The bill of particulars charges as to counts five through eight that the defendant recklessly caused the deaths of the same four persons and that in the commission of the offenses he was operating his car under the influence of alcohol. As to count nine, the bill of particulars charges that the defendant recklessly caused physical harm to Julian Scott and that in the commission of the offense he was operating his car under the influence of alcohol.

Following the collision the defendant and two members of the Scott family were taken to the emergency room at St. Luke's Hospital in Maumee, Ohio. The defendant was seriously injured and an emergency room doctor ordered that three blood tests, including a test for blood alcohol, be performed on defendant. The tests were ordered by the emergency room physician for medical purposes and not for forensic or legal purposes. The defendant's blood was drawn while he was in the emergency room, and the tests were performed shortly afterwards. The result of the test on defendant's blood serum was an ethanol level of .185.[1]

Trooper Eric Gonzalez of the Ohio State Highway Patrol was the senior officer in charge of the scene of the collision. He went to St. Luke's Hospital to check on the status of those involved in the collision, including the defendant. He also wanted to obtain a blood-alcohol test of the defendant, if possible. However, after consulting with his lieutenant and a prosecutor, he determined that he could not obtain a blood-alcohol test because the two-hour time limit contained in the applicable statute had expired. He was told that the hospital had taken a blood sample from the defendant to be analyzed for blood alcohol. He did not request any of the hospital personnel to maintain the blood sample for possible future

---

**1.** The present standard for intoxication is ten-hundredths of one percent or more by weight of alcohol in the whole blood of a suspect. R.C. 4511.19(A)(2). Dr. Robert Forney, a toxicologist, testified that the alcohol level in blood serum is fifteen percent higher than the alcohol level measured in a sample of whole blood.

court proceedings. After the defendant's blood was tested for alcohol, the sample was stored for three days and then destroyed.

## II

The state seeks to admit at trial the results of the defendant's blood-alcohol test to establish an element of the involuntary manslaughter charges: that the deaths occurred as the proximate result of the defendant's driving under the influence of alcohol. In addition, if the state proves that the defendant was under the influence of alcohol at the time he committed the offenses of involuntary manslaughter, aggravated vehicular homicide, and aggravated vehicular assault, then the defendant's sentence will be subject to enhancement pursuant to R.C. 2903.04(D)(1), 2903.06(B), and 2903.08(C).

The defendant advances four primary arguments in support of his motions to exclude the results of his blood test. First, he argues that the testing was not done in accordance with the regulations of the Ohio Department of Health as codified in the Ohio Administrative Code. Second, he argues that his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution were violated when the blood sample was not preserved for independent analysis. Third, relying on Evid.R. 702 and recent case law interpreting that rule, the defendant argues that the evidence as to his blood-alcohol level is not reliable. Finally, he argues that federal law requires that the blood test results be excluded.

## A. VIOLATION OF THE OHIO DEPARTMENT OF HEALTH REGULATIONS

In R.C. 3701.143, the Ohio General Assembly granted the Ohio Department of Health certain rule-making authority. Pursuant to that authority, the Department of Health in Chapter 3701–53 of the Ohio Administrative Code promulgated certain regulations or rules relating to blood-alcohol testing. It is undisputed that the procedures followed by St. Luke's's Hospital in testing the defendant's blood do not comply with certain of the Ohio Department of Health rules. The state of Ohio contends that failure to follow the Ohio Department of Health regulations relating to the defendant's blood-alcohol test does not render the results of that test inadmissible in evidence.

Defendant relies upon the cases of *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, and *State v. Pryzborowski* (May 29, 1998), Miami C.P. No. 97–CR 351, unreported, to support his contention that the results of the blood-alcohol test are inadmissible. His reliance is misplaced. In *Plummer*, the Supreme Court of Ohio held that the admissibility of test results to establish alcohol concentration in prosecutions under R.C. 4511.19 (driving under the

influence) turns on substantial compliance with Ohio Department of Health regulations. *Plummer*, 22 Ohio St.3d at 295, 22 OBR at 464, 490 N.E.2d at 905. It did not hold that substantial compliance with Ohio Department of Health regulations is a prerequisite to admission of blood-alcohol evidence in involuntary manslaughter or aggravated vehicular homicide prosecutions. An unbroken line of appellate cases from the Sixth District Court of Appeals and from other appellate districts establishes the general rule that a lack of compliance with Ohio Department of Health regulations governing blood tests does not render the result of such a blood test inadmissible in prosecutions for involuntary manslaughter and/or aggravated vehicular homicide. *State v. Hatfield* (Oct. 20, 1995), Lucas App. No. L–94–306, unreported, 1995 WL 612916; *State v. Hernandez* (1978), 62 Ohio App.2d 63, 16 O.O.3d 114, 403 N.E.2d 1022; *State v. Schulte* (Oct. 25, 1996), Lake App. No. 94–L–186, unreported, 1996 WL 660880, discretionary appeal not allowed (1997), 78 Ohio St.3d 1428, 676 N.E.2d 533; *State v. McKinnon* (1987), 38 Ohio App.3d 28, 525 N.E.2d 821; *State v. Stinson* (1984), 21 Ohio App.3d 14, 21 OBR 15, 486 N.E.2d 831; *State v. Davis* (1983), 13 Ohio App.3d 265, 13 OBR 329, 469 N.E.2d 83. The court in *Pryzborowski* did not consider these cases.

██ Even assuming that substantial compliance with Ohio Department of Health regulations is a prerequisite to the admissibility of the blood test in this case, I find that there was substantial compliance with those regulations. The state has the burden of establishing substantial compliance with the regulations. Once the state has met this burden, the defendant must then establish prejudice before evidence can be excluded. *State v. Plummer*, syllabus; *State v. Cunningham* (Dec. 31, 1997), Erie App. No. E–97–030, unreported, 1997 WL 799598. Although the Supreme Court has consistently held that substantial compliance with the regulations is sufficient, it has not defined the term "substantial compliance." *Bolivar v. Dick* (1996), 76 Ohio St.3d 216, 218, 667 N.E.2d 18, 19–20, *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32, 34; *State v. Plummer, supra; State v. Steele* (1977), 52 Ohio St.2d 187, 192, 6 O.O.3d 418, 421, 370 N.E.2d 740, 743. However, the Sixth District Court of Appeals has applied the *Plummer* rules numerous times. A review of those cases establishes that where the failure to follow a regulation affects the reliability or accuracy of the test results, the court has held that the state has failed to established substantial compliance with the regulation. *State v. Garcia* (Jan. 16, 1998), Fulton App. No. F–97–020, unreported, 1998 WL 15921; *State v. Boos* (Sept. 15, 1995), Erie App. No. E–94–027, unreported, 1995 WL 547785. However, where the regulation violated does not affect the reliability or accuracy of the test result, the court has held that there has been substantial compliance with the regulations. *State v. Cunningham* (Dec. 31, 1997), Erie App. No. E–97–030, unreported, 1997 WL 799598; *State v. Love* (Apr. 26, 1996), Ottawa App. No. OT–95–042, unreported,

1996 WL 199189; *State v. Shoudt* (July 21, 1995), Ottawa App. No. OT–95–007, unreported, 1995 WL 428456, discretionary appeal not allowed (1995), 74 Ohio St.3d 1484, 657 N.E.2d 1377; *State v. Williams* (May 19, 1995), Wood App. No. WD–94–61, unreported, 1995 WL 302299; *State v. Satterfield* (June 30, 1993), Lucas App. No. L–92–315, unreported, 1993 WL 311544, appeal dismissed (1993), 68 Ohio St.3d 1419, 624 N.E.2d 194; *Huron v. Stidham* (Apr. 23, 1993), Erie App. No. E–92–21, unreported, 1993 WL 128185; *State v. Taylor* (Jan. 15, 1993), Ottawa App. No. 92–OT–017, unreported, 1992 WL 402172.

In this case, the evidence is undisputed that the following sections of Ohio Admin.Code Chapter 3701–53 were violated: (1) Section 5(C)—the blood was not drawn into a vacuum container with a solid anticoagulant; (2) Section 5(E)—the defendant's blood was not sealed in a container in such a manner that tampering could be detected; (3) Section 5(F)—the defendant's blood while not in transit or under examination was not refrigerated; (4) Section 6(A)—no record of the chain of custody of defendant's blood sample was created or maintained, and the defendant's blood sample was not retained for a period of one year; (5) Section 9—neither St. Luke's Hospital nor the personnel participating in the testing of the defendant's blood had a permit from the Ohio Department of Health.

At the hearing on the motions to suppress/motions *in limine,* the defendant called as his witness Dr. Robert B. Forney, an assistant professor in the department of pathology and director of toxicology at the Medical College of Ohio. He testified that he was licensed by the Ohio Department of Health to direct toxicology examinations for the purposes of alcohol analysis and that he was familiar with the Ohio Department of Health regulations governing that analysis. Dr. Forney testified that the method used by St. Luke's to test the defendant's blood was a method approved by Department of Health regulations, that it was the most common method used by hospitals, and that it is a method generally accepted in the scientific community for being accurate in determining the presence of alcohol in blood. He testified that the failure to comply with the rules relating to the chain of custody, refrigeration of the sample, and the sealing of the sample would have no impact on the reliability of the test in this case. Dr. Forney also testified that, in his opinion, the method used to analyze the blood in this case was in substantial compliance with the Ohio Department of Health regulations. Testimony from St. Luke's employees established that while St. Luke's lab was not certified by the Ohio Department of Health, the lab was certified by the American Society of Clinical Pathologists, the Joint Commission of Accreditation of Hospitals, and the American Association of Hospitals. Similarly, the testimony established that while the clinician who ran the tests on defendant's blood was not certified by the state, she was a registered medical technologist with the American Society of Clinical Pathologists.

Based upon the record and the applicable case law, I find that the violations of the Ohio Department of Health regulations in this case did not affect the reliability or accuracy of the defendant's blood test. For that reason, I find that the state has met its burden to establish substantial compliance with the regulations. I further find that the defendant has failed to establish that he was prejudiced by any violation of the Ohio Department of Health regulations. Accordingly, the defendant's motion to exclude the results of blood test because of the failure of St. Luke's Hospital to strictly comply with the Ohio Department of Health regulations must be denied.

## B. DUE PROCESS

The defendant next contends that destruction of the blood sample by St. Luke's Hospital violated his due process rights under the Fourteenth Amendment to the United States Constitution. At the outset, it is important to note that a due process claim based on the Fourteenth Amendment requires state action. *Ohio Domestic Violence Network v. Pub. Util. Comm.* (1994), 70 Ohio St.3d 311, 316, 638 N.E.2d 1012, 1017–1018. In this case, it was a private hospital, not the state, that destroyed the blood sample. For that reason alone, defendant's due process argument must be rejected.

Nevertheless, assuming for purposes of these motions that there was state action, the defendant's constitutional claim still fails. The United States Supreme Court has called this area of law "constitutionally guaranteed access to evidence." *Arizona v. Youngblood* (1988), 488 U.S. 51, 55, 109 S.Ct. 333, 336, 102 L.Ed.2d 281, 287, rehearing denied (1989), 488 U.S. 1051, 109 S.Ct. 885, 102 L.Ed.2d 1007. In this area of the law, forensic evidence falls into two categories: material exculpatory evidence and potentially useful evidence. *Youngblood*, 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289; *State v. Fort* (July 18, 1997), Lucas App. No. L–96–299, unreported, 1997 WL 416302; *State v. Lewis* (1990), 70 Ohio App.3d 624, 634, 591 N.E.2d 854, 860–861, appeal dismissed (1991), 58 Ohio St.3d 716, 570 N.E.2d 277, *State v. Thomas* (Mar. 15, 1990), Cuyahoga App. No. 56652, unreported, 1990 WL 28831. According to the Sixth District Court of Appeals, evidence is material exculpatory evidence only if "1) its exculpatory nature was known before it was destroyed and 2) it is of such a nature that no comparable evidence could be reasonably produced by the defense. Furthermore, there must be 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " *Fort, supra,* quoting *State v. Johnston* (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus, rehearing denied (1988), 40 Ohio St.3d 707, 534 N.E.2d 850. See, also, *State v. Purdon* (1985), 24 Ohio App.3d 217, 219, 24 OBR

395, 396–397, 494 N.E.2d 1154, 1156–1157 (a pre-*Youngblood* case discussing material exculpatory evidence).

Evidence that is not material exculpatory evidence is termed "potentially useful" evidence. *Id.; Youngblood,* 488 U.S. at 57, 109 S.Ct. at 337, 102 L.Ed.2d at 289. Failure to preserve material exculpatory evidence is unconstitutional. Failure to preserve potentially useful evidence is unconstitutional only upon a showing of bad faith. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337–338, 102 L.Ed.2d at 289–290; *Fort, supra; Lewis,* 70 Ohio App.3d at 634, 591 N.E.2d at 860–861; *Thomas, supra.*

■ In this case, the defendant has not shown that the evidence was material exculpatory evidence. For example, he has not shown that anyone knew that the evidence was exculpatory before it was destroyed. On the contrary, the evidence, at the time it was destroyed, could only be characterized as highly incriminating. Though the defendant argues that the evidence could have exculpatory value, he does not present evidence that it actually had exculpatory value and that this exculpatory value was apparent before the sample was destroyed.

■ In addition to establishing that the exculpatory nature of the evidence was known before it was destroyed, a defendant must also prove that no comparable evidence could reasonably be produced by the defense. The defendant has not met this burden. The defendant argues that his constitutional rights were denied because he cannot retest the blood sample. However, the law is clear that a defendant's due process rights are violated when, *inter alia,* he cannot obtain *comparable* evidence, not when he cannot obtain the same evidence. See *Purdon,* 24 Ohio App.3d at 219, 24 OBR at 396–397, 494 N.E.2d at 1156–1157; *Fort, supra.*

For the foregoing reasons, I find that the blood sample is not material exculpatory evidence and is, instead, potentially useful evidence. Failure to preserve potentially useful is unconstitutional only upon a showing of bad faith. *Youngblood,* 488 U.S. at 58, 109 S.Ct. at 337–338, 102 L.Ed.2d at 289–290; *Lewis,* 70 Ohio App.3d at 634, 591 N.E.2d at 860–861; *Fort, supra; Thomas, supra.* In this case, there is simply no evidence showing bad faith on the part of the hospital or the police. Accordingly, I find that the hospital's failure to preserve the defendant's blood sample did not violate his constitutional right to due process.

## C. EVIDENCE RULE 702

■ The defendant also contends that Dr. Forney's testimony regarding the results of the blood test taken at the hospital should not be admitted at trial because the test is not reliable. Evid.R. 702 governs the admissibility of expert testimony. That rule provides:

"A witness may testify as an expert if all of the following apply:

"(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

"(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. To the extent that the testimony reports the result of a procedure, test, or experiment, the testimony is reliable only if all of the following apply:

"(1) The theory upon which the procedure, test, or experiment is based is objectively verifiable or is validly derived from widely accepted knowledge, facts, or principles;

"(2) The design of the procedure, test, or experiment reliably implements the theory;

"(3) The particular procedure, test, or experiment was conducted in a way that will yield an accurate result."

The defendant does not challenge the Dr. Forney's qualifications as an expert (Evid.R.702[A]), nor does he contend that the subject of his testimony is within the knowledge of a layperson (Evid.R.702[B]). The issue, then, is whether Dr. Forney's testimony is related to reliable evidence.

Recently, the Ohio Supreme Court applied the reliability test set out by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469. See *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 611–612, 687 N.E.2d 735, 739–741. Relying on *Daubert*, the court in *Miller* stated:

"To determine reliability, the *Daubert* court stated that a court must assess whether the reasoning or methodology underlying the testimony is scientifically valid. In evaluating the reliability of scientific evidence, several factors are to be considered: (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. Although these factors may aid in determining reliability, the inquiry is flexible." (Citations omitted.) *Bike*, 80 Ohio St.3d at 611, 687 N.E.2d at 740.

In this case, Dr. Forney, a forensic pathologist specializing in toxicology at the Medical College of Ohio, testified about the method used by St. Luke's Hospital to test the defendant's blood. According to Dr. Forney's testimony, the hospital used the Bonnichsen method to test the blood, a method that is the most common

method used in hospitals. Dr. Forney also testified that this method is accepted in the Ohio Department of Health regulations and is also generally accepted in the scientific community as an accurate test. Based on this testimony, I find that the method used for testing the defendant's blood is reliable and that testimony regarding that test should be admitted. See Evid.R. 702; *Miller*, 80 Ohio St.3d 607, 611–612, 687 N.E.2d 735, 739–741.

Defendant also argues that the failure to comply with the regulations relating to blood testing promulgated by the Ohio Department of Health renders the results of the blood test in this case inadmissible under Evid.R. 702 and *Miller*. However, as discussed above, the procedures followed by St. Luke's Hospital were in substantial compliance with the regulations, and any violations did not affect the reliability of the test results.

## D. FEDERAL LAW

■ Finally, the defendant contends that the results of the blood test at St. Luke's Hospital should be suppressed because disclosure of the results violates federal law. According to the defendant, while R.C. 2317.02(B)(1)(b) abolishes the patient/physician privilege for blood tests when a criminal action is pending, that section is limited by a phrase in R.C. 2317.02(B)(2)(a) stating, "except to the extent specifically prohibited by any law of this state or of the United States." The defendant contends that Section 290dd–2(c), Title 42, U.S.Code prohibits the disclosure of the defendant's blood test results. The state, on the other hand, contends that Section 290dd–2(c) does not apply to this case.

R.C. 2317.02 states, in pertinent part:

"(B) * * *

"The testimonial privilege [physician/patient] under this division does not apply, and a physician or dentist may testify or may be compelled to testify in any of the following circumstances:

" * * * *

"(b) In any criminal action concerning any test or the results of any test that determines the presence or concentration of alcohol, a drug of abuse, or alcohol and a drug of abuse in the patient's blood, breath, urine, or other bodily substance at any time relevant to the criminal offense in question."

R.C. 2317.02(B)(2)(a) provides a process by which law enforcement officers may request and receive the medical records described above. According to the statute, upon request, the "provider, except to the extent specifically prohibited by any law of this state or of the United States, shall supply to the officer a copy of any of the requested records the provider possesses." R.C. 2317.02(B)(2)(a). Section 290dd–2(a), Title 42, U.S.Code provides:

"Records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research, which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall, except as provided in subsection (e) of the section, be confidential and be disclosed only for the purposes and under the circumstances expressly authorized under subsection (b) of this section."

Subsection (e) lists certain exceptions not applicable to this case. Similarly, subsection (c) lists the circumstances permitting disclosure, none of which is applicable to this case. Section 290dd–2(c) provides:

"Except as authorized by a court order granted under subsection (b)(2)(C) of this section, no record referred to in subsection (a) of this section may be used to initiate or substantiate any criminal charges against a patient or to conduct any investigation of a patient."

In circumstances similar to the instant case, two Ohio courts have recently considered whether Section 290dd–2(c) prohibits disclosure of blood-alcohol tests. The two courts reached different results. See *State v. Pryzborowski* (May 29, 1998), Miami C.P No. 97CR351, unreported (finding that the records should not be disclosed); *Middletown v. Newton* (Feb. 9, 1998), Butler App. No. CA97–07–149, unreported, 1998 WL 54377 (finding that Section 290dd–2 does not apply and that the records should be disclosed). I find the reasoning of the court in *Middletown* to be persuasive. Clearly, Section 290dd–2 does not apply to this case. That section applies to records maintained in connection with "any program or activity relating to substance abuse education, prevention, training, treatment, rehabilitation, or research." In this case, the defendant was not in the hospital for drug abuse treatment or education; he was in the hospital because he was injured in an automobile collision. The blood test was taken as part of the treatment for his injuries. Further, as the court in *Middletown* noted, the purpose of Section 290dd was to ensure confidentiality so as to not discourage patients from seeking treatment for drug abuse. *Middletown, supra,* quoting *Ellison v. Cocke Cty., Tenn.* (C.A.6, 1995), 63 F.3d 467, 471. Since the defendant was not in the hospital seeking treatment for drug abuse, Section 290dd on its face does not apply.

In addition, the amendment to R.C. 2317.02 removing the physician-patient privilege for blood, breath, or urine tests where a criminal action is pending was passed in 1993, apparently in response to the Ohio Supreme Court's opinion in *State v. Smorgala* (1990), 50 Ohio St.3d 222, 553 N.E.2d 672. See *State v. McGriff* (1996), 109 Ohio App.3d 668, 676, 672 N.E.2d 1074, 1079 (Thomas F. Bryant, J., dissenting), discretionary appeal not allowed (1996), 76 Ohio St.3d 1473, 669

N.E.2d 856. The clear intent of the legislature was to increase the use of blood-alcohol tests in criminal cases. The holding of the court in *Pryzborowski*, that R.C. 2317.02(B)(1)(b) is limited by Section 290dd, ignores the legislature's clear intent. I therefore find that the *Pryzborowski* case is not persuasive, and I find that federal law does not prohibit the disclosure of the defendant's blood-alcohol test.

## III

The state of Ohio has filed a motion *in limine* to exclude the potential testimony of Dr. Alfred E. Staubus, an expert witness identified by the defendant. On June 11, 1998, a hearing was held and Dr. Staubus testified regarding an out-of-court experiment conducted under his direction. In this experiment Dr. Staubus had an individual of similar height and weight to the defendant drink alcoholic beverages during a period of time that approximated the defendant's actions on the date of the collision. The individual's blood and breath alcohol was then measured. While the results of the blood tests taking during the out-of-court experiment were not admitted into evidence at the hearing on the state's motion *in limine,* presumably the results of the out-of-court experiment will be offered at trial to attack the reliability of the blood-alcohol test performed on the defendant at St. Luke's Hospital.

Evid.R. 402 regarding relevancy and Evid.R. 702 regarding the admissibility of scientific testimony govern the issue presented by the state's motion. In *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382, the Supreme Court of Ohio considered these evidence rules in connection with certain out-of-court testing in a driving-under-the-influence case. The court held in its syllabus:

"The admission or rejection of evidence concerning out-of-court experiments is a matter peculiarly within the discretion of the trial court, and reviewing courts will not interfere absent an abuse of discretion. (*St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio RR. Co.* [1935], 129 Ohio State 401, 2 O.O. 396, 195 N.E. 861, paragraph two of the syllabus, approved and followed.)"

In *Taylor*, the court agreed with the trial court's determination that the out-of-court testing was not admissible under Evid. R. 402 and 702. However, the court held that the issue was not whether the Supreme Court would have ruled as the trial court did, but whether the trial court abused its discretion.

In *Bowling Green v. Andrews* (1989), 61 Ohio App.3d 337, 572 N.E.2d 786, the Sixth District Court of Appeals dealt with a case involving an out-of-court experiment in a driving-under-the-influence case. In that case the trial court prohibited the defendant from introducing testimony from an expert witness relating to the expert's projective calculations of the alcohol content in the

defendant's system based upon the amount of alcohol allegedly consumed, the defendant's weight, and the expert's opinion as to the effect of the alcohol upon the defendant. In holding that the trial court erred, the court of appeals stated that the out-of-court experiment was relevant and that it would not mislead or confuse the jury. *Id.* at 340, 572 N.E.2d at 787–788. The court of appeals also stated that any possible confusion could be avoided by appropriate jury instructions. *Id.* Finally, the court of appeals distinguished *Taylor,* stating that certain factors present in the *Taylor* case could not be reliably duplicated in an out-of-court experiment. *Id.* at 341, 572 N.E.2d at 788.

In this case, I find that the out-of-court experiment is relevant and that it would not mislead or confuse the jury. See *Andrews,* 61 Ohio App.3d at 340, 572 N.E.2d at 787–788. I also find that, unlike *Taylor,* the defendant's actions on the day of the collision can be reliably duplicated. Any differences in actual events and simulated events can be adequately addressed on cross-examination. For these reasons, the state's motion *in limine* will be denied.

### JUDGMENT ENTRY

The defendant's motion to suppress filed on April 1, 1998 is found not well taken and ordered denied.

The defendant's motion to suppress/motion *in limine* filed on April 21, 1998 is found not well taken and ordered denied.

The defendant's motion to suppress/motion *in limine* to exclude blood test results from coming into evidence filed April 24, 1998 is found not well taken and ordered denied.

The defendant's motion *in limine* to suppress blood test results based on federal law filed June 24, 1998 is found not well taken and ordered denied.

The state of Ohio's motion *in limine* filed June 10, 1998 is found not well taken and ordered denied.

*Motions denied.*