The STATE of Ohio, Appellee,

v.

MARKIN, Appellant.

[Cite as *State v. Markin,* 149 Ohio App.3d 274, 2002-Ohio-4326.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 01AP–1208.

Decided Aug. 22, 2002.

Janet E. Jackson, City Attorney, Stephen L. McIntosh, City Prosecutor, and Lara N. Baker, Assistant City Prosecutor, for appellee.

Tyack, Blackmore & Liston Co., L.P.A., and Jonathan T. Tyack, for appellant.

———————

PEGGY BRYANT, Judge.

{¶ 1} Defendant-appellant Calvin L. Markin appeals from a judgment of the Franklin County Municipal Court finding him guilty of operating a motor vehicle while under the influence of alcohol ("OMVI"), in violation of R.C. 4511.19(A)(6) (OMVI per se). Each of defendant's assigned errors relates to the trial court's overruling defendant's motion to suppress evidence leading to his arrest.

{¶ 2} According to testimony by Ohio State Highway Patrol Trooper Jason Highsmith at the suppression hearing, Highsmith was patrolling in his car at 12:47 a.m. on November 10, 2000, when he observed defendant make a left turn from Sullivant Avenue onto Demorest Road. Defendant slowed to almost a complete stop as his car approached the center of the intersection, even though he had a green light and no other traffic was around. After defendant's car made the "very, very slow" left turn, the car traveled over the right edge line of the road by the width of a tire for approximately 25 feet. The trooper then stopped defendant's car.

{¶ 3} Upon approaching defendant's driver's side window, Highsmith informed defendant why he had been stopped. Defendant explained that he was out looking for his dogs. Highsmith observed that defendant had "very slurred speech," "very glassy" eyes, and a "very strong odor of an alcoholic beverage" on his breath. Highsmith testified that defendant told him he had consumed six beers in approximately a four-hour time period. Based on the foregoing, Trooper Highsmith had defendant exit his car to perform field sobriety tests. Defendant used his car door to maintain his balance while exiting, and continued to hold on to the door to support himself as he walked to the rear of his car.

{¶ 4} Trooper Highsmith administered two standardized field sobriety tests to defendant: the horizontal gaze nystagmus ("HGN") test and the one-leg-stand test. The trooper did not administer the walk-and-turn test to defendant. Highsmith testified that defendant failed both tests he performed. Highsmith placed defendant under arrest and transported him to the Franklin Township Police Department, where defendant was given a breath-alcohol-concentration ("BAC") test on a BAC DataMaster. According to Highsmith, defendant's first BAC test resulted in a reading that indicated "invalid sample"; Highsmith did not keep the invalid sample printout. Highsmith stated that he waited 20 minutes and then administered a second BAC test to defendant on the same BAC DataMaster machine. The result of the second test was a reading of .195 grams of alcohol per 210 liters of deep lung breath. Defendant was then charged with

two counts of OMVI pursuant to R.C. 4511.19(A)(1) (impaired) and (A)(6) (per se) and a marked-lanes violation under R.C. 4511.33.

{¶ 5} Following the suppression hearing, the trial court found that defendant's performance on the one-leg-stand test and the circumstances surrounding defendant's arrest provided sufficient evidence to establish probable cause to arrest defendant for OMVI. In response to defendant's claims that the result of defendant's second BAC test had to be suppressed because the printout of the first test was not retained, the trial court determined that (1) "[t]he fact that an invalid sample was noted by the officer who administered the test is sufficient, when uncontroverted, to allow the officer to re-administer the test following a twenty minute observation period," and (2) "[t]he printout indicating an invalid sample did not have to be maintained as a record document to satisfy the requirement for substantial compliance with the Ohio Department of Health regulations." The court concluded that the BAC test was administered to defendant in "substantial compliance with the standards set forth by the Ohio Department of Health in the Ohio Administrative Code Chapter 3701.53." Accordingly, the trial court overruled defendant's motion to suppress the evidence surrounding defendant's arrest.

{¶ 6} Defendant subsequently pleaded no contest to the OMVI per se charge, preserving the issues raised in his motion to suppress. The trial court found defendant guilty of the OMVI per se offense, dismissed the remaining charges, and stayed enforcement of the sentence imposed against defendant pending defendant's appeal.

{¶ 7} On appeal, defendant assigns the following errors:

{¶ 8} "I. The Trial Court erred in overruling Appellant's motion to suppress all evidence arising out of Appellant's unconstitutional arrest by Trooper Highsmith.

{¶ 9} "II. The Trial Court erred in overruling Defendant's motion to suppress the results of Appellant's breath tests based on the Trooper's failure to retain the printout of the invalid sample test result in violation of the Ohio Department of Health regulations contained in Ohio Administrative Code § 3701–53.

{¶ 10} "III. The Trial Court erred in overruling Appellant's motion to suppress the results of his breath test as a result of the trooper's failure to retain the printout of Appellant's invalid sample test result in violation of Appellant's right to due process and equal protection under the law."

{¶ 11} In his first assignment of error, defendant asserts that the trial court erred in overruling defendant's motion to suppress the evidence arising out of his arrest. Defendant contends that suppression was warranted because the

trooper's failure to administer all three field sobriety tests outlined in the National Highway Traffic Safety Administration ("NHTSA") DWI Detection and Standardized Field Sobriety Testing Manual did not strictly comply with the procedures set forth in the NHTSA Manual, as required by the Ohio Supreme Court in *State v. Homan* (2000), 89 Ohio St.3d 421, 732 N.E.2d 952. Defendant maintains that a review of the NHTSA Manual reveals that the NHTSA Manual contemplates that all three tests will be administered.

{¶ 12} Citing an extensive study by the NHTSA, the Ohio Supreme Court in *Homan* determined that "[w]hen field sobriety testing is conducted in a manner that departs from established methods and procedures, the results are inherently unreliable." 89 Ohio St.3d at 424, 732 N.E.2d 952. The court held that "in order for the results of *a* field sobriety test to serve as evidence of probable cause to arrest, the police must have administered *the* test in strict compliance with standardized testing procedures." (Emphasis added.) Id. Accord *State v. Kolesar* (Sept. 20, 2001), Franklin App. No. 00AP–1435, 2001 WL 1098049, discretionary appeal not allowed in (2002), 94 Ohio St.3d 1433, 761 N.E.2d 48. An examination of the language used by the court in *Homan* reveals that the court refers to field sobriety test results in the singular, not plural, when discussing admissibility. Id. Nowhere in *Homan* does the court require all three field sobriety tests to be administered before the results of any one test are admissible in a determination of probable cause.

{¶ 13} Further, the NHTSA Manual does not require that the HGN test, the walk-and-turn test, and the one-leg-stand test each be given for the test results to be a valid indicator of a BAC above the legal limit of .10. Without question, the manual points out studies that have indicated that a battery of all three tests administered in a standardized manner produces test results that are a highly reliable indicator of a BAC above .10. See NHTSA Manual, HS 178, R2/00, VIII–2.

{¶ 14} The manual, however, also notes the individual reliability of each field sobriety test and the accuracy of a combination of the HGN and walk-and-turn tests when administered in accordance with the standardized testing procedures. Id., VIII–1, –2. Significantly, the manual states the HGN test "*alone* can provide valid indications to support arrest decisions." (Emphasis added.) Id., VIII–3. Moreover, rather than requiring that all three tests be administered, the manual suggests circumstances under which one or more of the tests should not be given, as when the manual directs the HGN test should not be administered to an individual who has an obvious eye disorder or an artificial eye, and the manual cautions regarding administering a test where safety concerns exist for either the officer or the subject. See HS 178, R2/00, VIII–5, –12, –14. See, also, HS 178, R10/95, VIII–21, –24.

{¶ 15} Although the degree of reliability of the results may increase with the number of standardized field sobriety tests administered, the accuracy of a field sobriety test, or a combination of field sobriety tests, in predicting a BAC above .10 is an issue going to the weight, not the admissibility, of the evidence for each field sobriety test administered in strict compliance with standardized testing procedures. Accordingly, all three field sobriety tests need not be administered for any one test result, properly administered, to be admissible into evidence for consideration in determining probable cause for arrest.

{¶ 16} Defendant alternatively contends that the state failed to demonstrate that the trooper strictly complied with the standardized testing procedures, as required by *Homan* and *Kolesar,* for the two field sobriety tests that were administered. Defendant therefore asserts that the test results should have been excluded from the trial court's determination of whether the trooper had probable cause to arrest defendant for OMVI.

{¶ 17} In *Kolesar,* this court reiterated that field sobriety tests, including the one-leg-stand test, must be administered in strict compliance with standardized testing procedures for the results to serve as evidence of probable cause to arrest. Here, whether Trooper Highsmith strictly complied with the standardized procedures for administering the HGN test is irrelevant because the trial court did not consider the results of the HGN test in making its probable cause determination. Instead, the trial court limited its consideration to the trooper's observations of defendant and his driving and to defendant's performance on the one-leg-stand test. Accordingly, any deviations from standardized procedures in administering the HGN test did not affect the court's decision and need not be addressed.

{¶ 18} Regarding his administration of the field sobriety tests, Trooper Highsmith testified that he was trained in the standardized test procedures set forth in the 1995 NHTSA Manual and he utilized those procedures while administering the field sobriety tests to defendant. Trooper Highsmith's testimony reveals that he strictly complied with the standardized procedures set forth in the 1995 NHTSA Manual regarding the instructions and demonstrations to be given for the one-leg-stand test. See 1995 NHTSA Manual, VIII–22, –25. The record does not support defendant's assertion that no evidence was presented to show that Trooper Highsmith observed defendant from at least three feet away as required by the 1995 NHTSA Manual, VIII–23. Rather, the record reveals that Trooper Highsmith testified at the suppression hearing that he was approximately five feet away from defendant as he performed the one-leg-stand test. Because the record shows the one-leg-stand test was administered in strict compliance with standardized test procedures, the trial court did not err in

considering the results of the test in determining whether the trooper had probable cause to arrest defendant for OMVI. *Homan*; *Kolesar*, supra.

{¶ 19} Defendant further contends that absent the field sobriety test results, the remaining facts and circumstances surrounding his arrest are insufficient to establish probable cause for his arrest.

{¶ 20} In *Homan*, the Supreme Court explained that to determine whether a law enforcement officer had probable cause to arrest a suspect for driving under the influence, a court is to consider whether, at the moment of arrest, the officer had sufficient information, derived from a reasonably trustworthy source, of facts and circumstances sufficient to cause a prudent person to believe that the suspect was driving under the influence. Id., 89 Ohio St.3d at 427, 732 N.E.2d 952. In making this determination, the trial court examines the totality of facts and circumstances leading to the arrest. Id.; *Kolesar*, supra. Probable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more of the field sobriety tests. Rather, "[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." *Homan* at 427, 732 N.E.2d 952.

{¶ 21} Defendant asserts that the facts in this case are analogous to those in *Kolesar*, in which this court concluded that the facts did not support probable cause to arrest the defendant for OMVI. Defendant urges this court to reach a similar conclusion here.

{¶ 22} *Kolesar* is factually distinguishable from this case. In *Kolesar*, the court considered the following evidence concerning the defendant: (1) an odor of alcohol described as strong, (2) slurred speech, (3) an admission of drinking two or three beers, (4) leaning against the vehicle for support while exiting, and (5) an inability to recite the alphabet. Significantly, the court in *Kolesar* found no evidence of the defendant's erratic driving suggesting that the defendant's ability to drive had been impaired. The court noted that had such evidence existed, the ruling in the case may have been different.

{¶ 23} Here, the record contains evidence of impairment of defendant's ability to operate his vehicle. Defendant was observed to come to almost a complete stop in the middle of an intersection at a green light and then make a very slow left turn, after which he drove outside the edge line by the width of a tire for approximately 25 feet. Additionally, here the other indicia of intoxication are stronger than in *Kolesar*: (1) defendant's odor of alcohol was characterized as "very strong," (2) his speech was "very slurred," (3) his eyes were "very glassy," (4) he admitted to drinking six beers, and (5) he needed support both in exiting

his vehicle and in walking to the back of his car. Finally, in this case, in contrast to the defendant in *Kolesar*, defendant's failed performance on the one-leg-stand test was admissible for consideration of whether the trooper had probable cause to arrest.

{¶ 24} The facts here are more analogous to those in *Homan* than *Kolesar*. In *Homan*, a trooper testified that (1) the defendant drove in an erratic manner, weaving and twice driving left of center, (2) the defendant had a "strong" odor of alcohol, (3) the defendant's eyes were "red and glassy," and (4) the defendant admitted consuming three beers. Id., 89 Ohio St.3d at 421–422, 427, 732 N.E.2d 952. In its review, the Supreme Court concluded that the totality of these facts and circumstances "amply" supported the trooper's decision to arrest the defendant for driving under the influence. Id. at 427, 732 N.E.2d 952.

{¶ 25} Other courts have found probable cause to arrest under similar circumstances. See, e.g., *State v. Young* (Dec. 31, 2001), Warren App. No. CA2001–03–019, 2002 WL 4526 (finding sufficient evidence in erratic driving, odor of alcohol, glassy and bloodshot eyes, slurred speech, leaning on vehicle for support); *State v. Scott* (Nov. 21, 2001), Summit App. No. 20582, 2001 WL 1475804 (finding sufficient evidence in speeding, odor of alcohol, slow and slurred speech, admission to drinking, use of vehicle for support); *State v. Kirby* (Sept. 28, 2001), Ottawa App. No. OT–00–047, 2001 WL 1155811 (finding sufficient evidence in weaving within lane, strong odor of alcohol, red and glassy eyes, slurred speech, and admission to consuming alcohol); *State v. Gigliotti* (Dec. 22, 2000), Erie App. No. E–99–081, 2000 WL 1867265 (finding sufficient evidence in marked lanes violation, slow reaction to request for license, slurred speech, red and bloodshot eyes, strong odor of alcohol, and admission to drinking "too much").

{¶ 26} Because the totality of the facts and circumstances in this case supports the trial court's finding of probable cause to arrest defendant for OMVI, defendant's first assignment of error is overruled.

{¶ 27} In his second assignment of error, defendant asserts that the trial court erred in overruling his motion to suppress the results of defendant's breath test because the trooper's failure to retain the printout of the initial test, which yielded an invalid sample reading, violates Ohio Adm.Code 3701–53. Defendant contends that (1) without the printout of the invalid sample, this court cannot determine whether the trooper complied with the Department of Health's 20–minute observation period required by Ohio Adm.Code 3701–53–02(B) before readministering the breath test and (2) the failure to retain the printout violates Ohio Adm.Code 3701–53–01(A), which requires test results to be retained for three years.

■ {¶ 28} "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172. Thus, a reviewing court is bound to accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. Nevertheless, without deference to the trial court's conclusion, the reviewing court must independently determine as a matter of law whether the trial court's decision meets the appropriate legal standard. *State v. Turner* (Dec. 21, 2000), Franklin App. No. 00AP–248, 2000 WL 1863410.

{¶ 29} In this case, defendant was charged with OMVI per se, in violation of R.C. 4511.19(A)(6), based on his breath test result indicating a BAC of .195. R.C. 4511.19(D) requires that a defendant's breath "be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code." R.C. 3701.143, in turn, requires that the Director of Health set forth techniques or methods for determining the concentration of alcohol when chemically analyzing blood, breath, or urine. The Department of Health has set forth testing rules in Ohio Adm.Code 3701–53.

■ {¶ 30} The Supreme Court has held that strict compliance with the Department of Health regulations regarding breath testing is not necessary for test results to be admissible. *Homan,* 89 Ohio St.3d at 426, 732 N.E.2d 952; *State v. Steele* (1977), 52 Ohio St.2d 187, 6 O.O.3d 418, 370 N.E.2d 740. Absent a showing of prejudice to a defendant, a breath test result will be admitted into evidence when the test was administered in substantial compliance with the Department of Health regulations. *Bolivar v. Dick* (1996), 76 Ohio St.3d 216, 667 N.E.2d 18; *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902, syllabus; *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32; *Columbus v. Grove* (Nov. 14, 1995), Franklin App. No. 95APC06–679, 1995 WL 681221, affirmed sub nom. *In re Admin. License Suspension Cases* (1996), 76 Ohio St.3d 597, 669 N.E.2d 1114.

{¶ 31} Defendant is correct that a subject must be observed for 20 minutes prior to the administration of a breath test to prevent oral ingestion of any material. See Ohio Adm.Code 3701–53–02(B); *Bolivar,* 76 Ohio St.3d at 217, 667 N.E.2d 18. However, without citing any authority in support, defendant further claims that an officer must wait an additional 20 minutes after a breath test produces an invalid sample reading before the officer readministers a breath test to the subject. For purposes of our analysis, we assume, without deciding, that an additional 20–minute observation period is required before a breath test may be readministered after an initial test yields an invalid sample reading.

{¶ 32} Here, Trooper Highsmith testified he observed defendant for 20 minutes before the initial breath test that resulted in an invalid sample reading. Moreover, the trooper testified that on receiving the invalid sample reading he checked defendant's mouth to ensure that it was empty and then waited an additional 20 minutes before readministering the test that resulted in the BAC reading of .195. Highsmith testified that he did not retain the printout of the initial breath test administered to defendant.

{¶ 33} Defendant asserts that without the printout of defendant's first breath test, which allegedly indicates the time the test was given, whether Trooper Highsmith complied with the 20–minute observation requirement before readministering the test to defendant cannot be conclusively determined.

{¶ 34} Contrary to defendant's assertion, Trooper Highsmith's uncontroverted testimony was sufficient to establish that he waited the required 20 minutes before readministering the breath test to defendant. See *Steele,* 52 Ohio St.2d at 189–190, 192, 6 O.O.3d 418, 370 N.E.2d 740 (holding that uncontroverted testimony of the testing officer that the defendant was observed for the requisite period of time constituted a solid foundation for the admission of breath test results); *State v. Willis* (1999), 131 Ohio App.3d 646, 723 N.E.2d 198 (holding the officer's testimony constituted sufficient evidence for the court to find the 20–minute observation period satisfied).

{¶ 35} Defendant next contends the trooper's failure to retain the printout violates Ohio Adm.Code 3701–53–01(A), which states:

{¶ 36} "Tests to determine the concentration of alcohol may be applied to blood, urine, breath, or other bodily substances. * * *

{¶ 37} " * * *

{¶ 38} "The results of the tests shall be retained for not less than three years."

{¶ 39} Defendant asserts that the above regulation requires printouts of *all* test results to be retained, including invalid sample readings. Defendant contends that retention of all such records furthers the public policy of preventing "unscrupulous officers" from discarding a test result under the legal limit based on the officer's claim that it was an invalid sample, and then readministering the breath test in hopes of a higher result. To resolve this issue, we examine the Department of Health regulation at issue.

{¶ 40} Although the regulation expressly requires "results of the tests" to be kept for three years, the regulation does not define the phrase "results of the tests." To determine the meaning of this phrase, we are aided by the rules of statutory construction, which apply to administrative rules and regulations having

the effect of legislative enactment. See, e.g., *State ex rel. R. Bauer & Sons Roofing & Siding, Inc. v. Indus. Comm.* (1998), 84 Ohio St.3d 62, 66, 701 N.E.2d 995; *State ex rel. Miller Plumbing Co. v. Indus. Comm.* (1948), 149 Ohio St. 493, 496–497, 37 O.O. 197, 79 N.E.2d 553.

{¶ 41} The paramount goal of statutory construction is to ascertain and give effect to the intent in enacting a statute. *Yonkings v. Wilkinson* (1999), 86 Ohio St.3d 225, 227, 714 N.E.2d 394; *Brooks v. Ohio State Univ.* (1996), 111 Ohio App.3d 342, 349, 676 N.E.2d 162, citing *Featzka v. Millcraft Paper* (1980), 62 Ohio St.2d 245, 16 O.O.3d 280, 405 N.E.2d 264. In so doing, a court must first look to the plain language of the statute and the purpose to be accomplished. *State ex rel. Pennington v. Gundler* (1996), 75 Ohio St.3d 171, 173, 661 N.E.2d 1049. The words must be accorded their usual, normal or customary meaning. Id.; *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519, opinion corrected on other grounds on reconsideration, 78 Ohio St.3d 1505, 679 N.E.2d 7. Thus, if the language used in a statute is clear and unambiguous, the statute must be applied as written and no further interpretation is necessary. Id.

{¶ 42} The purpose of the breath-alcohol testing regulations promulgated by the Department of Health is to ensure the accuracy of the testing and to maintain the evidentiary value of the test results. *State v. Rains* (1999), 135 Ohio App.3d 547, 552, 735 N.E.2d 1. With respect to the language of the regulation regarding "results of the tests," the regulation prescribes the manner in which results are to be expressed. Specifically, Ohio Adm.Code 3701–53–01(A) states:

{¶ 43} "Results shall be expressed as equivalent to:

{¶ 44} "(1) Grams by weight of alcohol per one hundred milliliters of blood (grams per cent by weight);

{¶ 45} "(2) Grams by weight of alcohol per two hundred ten liters of deep lung breath;

{¶ 46} "(3) Grams by weight of alcohol per one hundred milliliters of urine (grams per cent by weight)."

{¶ 47} Defendant argues that the fact that the initial test result was inconclusive as to any measurable amount of alcohol contained in defendant's breath does not mean it is not a test "result" under Ohio Adm.Code 3701–53–01(A). Contrary to defendant's contentions, the plain language of the regulation states that breath test results are expressed as "[g]rams by weight of alcohol per two hundred ten liters of deep lung breath." An "invalid sample" reading does not express the results in such terms; it merely indicates "invalid sample." Because an "invalid sample" does not express its results in the manner prescribed by the regulation, it is not a "test result" within the parameters of the regulation.

{¶ 48}   Although the better practice may be to retain the results of all breath tests administered, including those yielding an "invalid sample" reading, the Department of Health regulation does not require an "invalid sample" reading to be retained.   See *State v. Robinson* (June 30, 2000), Portage App. No. 99–P–0019, 2000 WL 895587 (holding that a "result" as that term is defined in Ohio Adm.Code 3701–53–01(A) does not encompass a result expressed as "invalid sample"); *State v. Bosier* (July 24, 2000), Clinton App. No. CA99–11–036, 2000 WL 1050976 (holding that an "invalid sample" reading is not a "result" as described in Ohio Adm.Code 3701–53–01[A] ).

{¶ 49}   In any event, even if the "invalid sample" printout was required to be retained, either pursuant to the above regulation or some other rule, defendant has not demonstrated prejudice as a result of Trooper Highsmith's failure to retain the printout such that the accuracy or evidentiary value of the result of the second breath test was compromised to defendant's prejudice.   Nor has defendant otherwise demonstrated that the failure to retain the printout of the invalid sample rendered the breath tests administered to defendant out of substantial compliance with the Department of Health regulations.

{¶ 50}   Accordingly, because the record shows that the breath tests were performed in substantial compliance with the Department of Health regulations, the trial court did not err in admitting into evidence the result of the second breath test administered to defendant by Trooper Highsmith.   *Bolivar,* supra. Defendant's second assignment of error is therefore overruled.

{¶ 51}   In his third assignment of error, defendant asserts that Trooper Highsmith's failure to retain the printout of the invalid sample reading and the trial court's attendant failure to suppress the breath test results on that basis denied defendant his right to due process and equal protection.

{¶ 52}   Defendant did not assert in the trial court, either in his motion to suppress evidence or in his arguments during the hearing on the motion, that he was denied his constitutional rights of due process and equal protection as a result of Trooper Highsmith's failure to retain the invalid sample printout. Constitutional arguments not presented in the trial court are deemed to be waived and may not be raised for the first time on appeal.   *Baker v. W. Carrollton* (1992), 64 Ohio St.3d 446, 448, 597 N.E.2d 74.

{¶ 53}   Nonetheless, even if defendant did preserve his claim for our review, he has failed to demonstrate its merit because he fails to argue, and the record fails to show, either (1) that the invalid sample printout possessed an apparent exculpatory value when Trooper Highsmith failed to retain it, and defendant has no other comparable evidence reasonably available, or (2) that Trooper Highsmith's actions in failing to retain the invalid sample printout

constituted bad faith on the trooper's part. See *State v. Estep* (1991), 73 Ohio App.3d 609, 598 N.E.2d 96 (rejecting a due process challenge to the state's failure to retain a urine sample used in a BAC test where similar arguments were presented), relying on *California v. Trombetta* (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413; *State v. Purdon* (1985), 24 Ohio App.3d 217, 24 OBR 395, 494 N.E.2d 1154. Accordingly, defendant's third assignment of error is overruled.

{¶ 54} Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

BOWMAN and KLATT, JJ., concur.