[Cite as *State v. Nethers*, 2019-Ohio-2898.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 18 CA 0076 |
| JARED NETHERS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal Appeal from the Municipal Court Case No.  18 TRC 04238


JUDGMENT:     Affirmed


DATE OF JUDGMENT ENTRY:     July 16, 2019


APPEARANCES:

For Plaintiff-Appellee

TRICIA M. MOORE
ASSISTANT LAW DIRECTOR
40 West Main Street
Newark, Ohio  43055

For Defendant-Appellant

KEVIN J. GALL
33 West Main Street
Suite 109
Newark, Ohio  43055

*Wise, J.*

{¶1} Appellant Jared A. Nethers appeals his OMVI conviction (based on a prohibited concentration of a drug of abuse), following a no contest plea, in the Licking County Municipal Court. The Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows.

{¶2} On the evening of January 15, 2018, Trooper Jordan Daniel of the Ohio State Highway Patrol was driving in his marked cruiser on State Route 657 in Burlington Township, Licking County. The area roads on that date were snow-covered. Shortly before 7:00 PM, the trooper saw a 1997 Chevrolet SUV in a roadside ditch and stopped to assist. He thereupon made contact with Appellant Nethers, whom he identified as the driver of the vehicle. Appellant had his fourteen-year-old daughter with him.

{¶3} Trooper Daniel later testified that he observed an odor of alcohol on appellant's breath as he spoke with him. He also observed appellant's eyes to be "glassy" and bloodshot. Supp. Tr. at 12. When asked, appellant admitted to having had one beer after work that day. Due to these observations, Trooper Daniels requested that appellant submit to field sobriety tests.

{¶4} The first one administered was the horizontal gaze nystagmus ("HGN") test. Trooper Daniel recalled *inter alia* that "[d]uring the HGN [appellant] had to be instructed several times on how to follow my finger." Tr. at 29. The trooper concluded that appellant exhibited four out of six possible clues on this test. Tr. at 17.

{¶5} Due to the snowy road conditions, Trooper Daniels did not administer the walk and turn or the one-leg stand test. Instead, he administered two additional, non-standardized tests: the "alphabet" test and the "flat finger dexterity" test, as further

discussed *infra*. The trooper noted that these types of tests provide insight into a driver's ability to handle tasks under conditions of divided attention. Tr. at 23-24.

**{¶6}** Based on his overall observations and appellant's performance of the aforesaid three tests, the trooper placed appellant under arrest for operating a vehicle while under the influence of alcohol and/or a drug of abuse ("OMVI").

**{¶7}** On January 17, 2018, appellant was charged (trial court case number 18-TRC-00630) with OMVI, in violation of R.C. 4511.19(A)(1)(a).

**{¶8}** On February 22, 2018, appellant filed a motion for leave to file an untimely motion to suppress evidence under 18-TRC-00630. The trial court thereafter granted the request for leave to file.

**{¶9}** On April 3, 2018, appellant was additionally charged (trial court case number 18-TRC-04238) with OMVI (based on an allegation of a prohibited concentration of a drug of abuse), in violation of R.C. 4511.19(A)(1)(j)(vii).

**{¶10}** On the same day, appellant's aforementioned motion to suppress came on for an oral hearing. Via a judgment entry issued on May 3, 2018, the trial court denied the motion to suppress.

**{¶11}** On April 18, 2018, upon a motion filed by the State, case numbers 18-TRC-00630 and 18-TRC-04238 were consolidated.

**{¶12}** On August 16, 2018, upon appellant's request, the trial court transferred appellant's motion to suppress evidence, and the corresponding judgment entry denying that motion, to 18-TRC-04238.

**{¶13}** On August 22, 2018, the matter came on for a change of plea and sentencing hearing. At that time, appellant entered a no contest plea to one count of OVI

in violation of R.C. 4511.19(A)(1)(j)(vii), in case number 18-TRC-04238. In exchange for the defendant's plea in 18-TRC-04238, case number 18-TRC-00630 was dismissed.

**{¶14}** Appellant was sentenced *inter alia* to serve thirty days in jail, with twenty-seven of those days suspended, and he was placed on probation for a period of one year.

**{¶15}** On August 23, 2018, appellant filed a notice of appeal. He raises the following sole Assignment of Error:

**{¶16}** "I. THE TRIAL COURT ERRED IN DETERMINING THAT THE ARRESTING OFFICER SUBSTANTIALLY COMPLIED WITH APPROVED TESTING STANDARDS AND THAT THERE WAS PROBABLE CAUSE TO ARREST MR. NETHERS FOR OVI."

I.

**{¶17}** In his sole Assignment of Error, appellant contends the trial court erred in concluding that Trooper Daniel substantially complied with field sobriety testing standards and that there was probable cause to arrest appellant. We disagree.

**{¶18}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. *See State v Karns,* 196 Ohio App.3d 731, 2011-Ohio-6109, ¶ 31 (5th Dist.) (citations omitted). When reviewing this third type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. *State v. Curry* (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d

1172; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 621 N .E.2d 726. The United States Supreme Court held in *Ornelas v. U.S.* (1996), 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911, that "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶19} As an initial matter, we are compelled to clarify our reading of the bounds of the present analysis. A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Todd*, 5th Dist. Ashland No. 14 COA 005, 2014-Ohio-4489, ¶ 19, quoting *State v. Anez* (2000), 108 Ohio Misc.2d 18, 26, 738 N.E.2d 491. However, in this instance, appellant's sole assigned error challenges the "probable cause to arrest" stage of his encounter with law enforcement on January 15, 2018. Appellant does not herein challenge the "stop" of his SUV, as the trooper happened upon the scene of a vehicle in a ditch and got out to provide assistance, and appellant does not argue that the trooper lacked reasonable suspicion to conduct any field sobriety testing at the scene. In that light, we will address appellant's present arguments.[1]

{¶20} Approximately twenty years ago, the Ohio Supreme Court decided *State v. Homan,* 89 Ohio St.3d 421, 732 N.E.2d 952, 2000-Ohio-212. The Court therein held as follows, at paragraph one of the syllabus: "In order for the results of a field sobriety test

---

[1] Under Crim.R. 47, a motion to suppress "shall state with particularity the grounds upon which it is made." The appellate record before us does not contain a copy of the motion to suppress, most likely because it was originally filed under the earlier-charged case, 18-TRC-00630. We herein proceed under the presumption that the present issues were raised in the suppression motion.

to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures."

**{¶21}** However, in response to the *Homan* decision, the General Assembly amended R.C. 4511.19. "Under the amended statute, the arresting officer no longer needs to have administered field sobriety tests in strict compliance with testing standards for the test results to be admissible at trial. Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." *See State v. Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 9; *State v. Allen,* 5th Dist. Licking No. 05 CA 10, 2006-Ohio-30, ¶ 14; R.C. 4511.19(D)(4)(b).

**{¶22}** Furthermore, in *State v. Boczar* (2007), 113 Ohio St.3d 148, 2007-Ohio-1251, the Ohio Supreme Court upheld the constitutionality of R.C. 4511.19(D)(4)(b), which, as indicated above, provides that the results of field sobriety tests are admissible when the tests are administered in "substantial compliance" with testing standards. *Id.* at ¶ 28. But the State maintains the burden in a suppression hearing to show substantial compliance with field sobriety testing methods. *Todd, supra,* at ¶ 25.

<u>*Horizontal Gaze Nystagmus Test*</u>

**{¶23}** In the case *sub judice*, Trooper Daniel testified at the suppression hearing that he commenced the HGN test by turning off his cruiser's overhead lights and positioning appellant off to the right side of the roadway, away from traffic. Supp. Tr. at 14. Trooper Daniel recalled that appellant had to be told multiple times to follow the stimulus as required. Tr. at 17. The trooper also noted that in his experience, some people tend to not follow the stimulus as instructed due to impairment or their familiarity with the

test. Tr. at 18. The trooper testified that he performed the HGN test in compliance with his training. *Id.* As indicated *supra*, the trooper observed four out of six clues. Tr. at 20.

**{¶24}** Trooper Daniel also testified that his decision to position appellant off to the right side of the cruiser was based on the danger presented by other vehicles on the snow-covered roadway. Tr. at 15. Because the HGN test was conducted in that particular location, the dashcam video provided in the present appellate record generally shows just the right arm and shoulder of the trooper, while appellant is fully off-camera. However, from our review of the DVD, it appears appellant is generally facing forward, *i.e.*, in the same direction as the nose of the cruiser is pointed.

**{¶25}** Appellant's chief concern under these circumstances is that the trooper failed to eliminate the possibility of optokinetic nystagmus. As recently summarized by the Ninth District Court of Appeals: "The NHTSA training manual explains that nystagmus can result from neural activity occasioned by 'watching strobe lights, rotating lights, or rapidly moving traffic in close proximity.' According to the NHTSA manual, this kind of 'optokinetic nystagmus' does not affect a properly administered HGN test." *State v. Tisch*, 9th Dist. Wayne No. 18AP0003, 2018-Ohio-5323, ¶ 10.

**{¶26}** Based on the video, the area in question appears to be mostly rural and, at the time in question, lightly travelled. Nonetheless, just as Trooper Daniel's voice is first heard telling appellant to follow the pen at about 19:02:50, two vehicles, with headlights on, pass by from the front, going off the left side of the screen at about 19:03:04. As the HGN test continues off-camera, albeit with generally poor audio, another car's headlights come into view at about 19:04:10. Said vehicle goes off the left side of the screen at about 19:04:44, and the HGN portion of the testing appears to be completed by about 19:05:20.

**{¶27}** Other than the aforesaid three passing vehicles, none of which appear to be moving fast, the only other noticeable automobile lights in the video during the HGN test are the flashing hazard lamps on appellant's SUV on the opposite side of the road. No other vehicles are seen passing by until 19:08:10, at which time the trooper has already moved on to additional testing, as discussed *infra*.

**{¶28}** Under the circumstances presented, we find the record before us does not support appellant's arguments challenging the trooper's utilization of the HGN test.

### *Non-Standardized Tests*

**{¶29}** The first of the non-standardized tests administered by the trooper was an alphabet test. Tr. at 23. Trooper Daniel first had appellant recite the alphabet from "A "to "Z" in order to determine whether he knew the alphabet in its entirety. Tr. at 23. He then directed appellant to recite the alphabet from "D" to "O." Tr. at 24. On his initial attempt, appellant continued past the letter "O." On his second attempt, he went from "D" to "O," but he skipped the letter "G." Tr. at 24-25, 37; Exhibit 2.

**{¶30}** Trooper Daniel also had appellant perform what he classified as the "flat finger dexterity test." Tr. at 21. This test required appellant to touch his thumb to his fingers in sequence counting forward from one to four and then repeating the actions backward. Tr. at 25. According to the trooper, appellant on his first attempt did not accurately count as he was instructed. Tr. at 26. However, on the second attempt, appellant completed the test correctly. Tr. at 27; Exhibit 2*.*

### *Analysis and Conclusion*

**{¶31}** Appellant urges at several points in his brief that the trooper's sole standardized test, *i.e.,* the HGN test, did not substantially comply with NHTSA standards

and that the two non-standardized tests did not comport with *any* generally accepted standards. However, "'[i]t has been repeatedly emphasized that probable cause is a fluid concept that is based upon a case-by-case evaluation of the totality of the circumstances.'" *Todd*, *supra*, at ¶ 31, citing *State v. Reid,* 9th Dist. Lorain No. 12CA010265, 2013–Ohio–4274, ¶ 26 (Belfance, P.J., dissenting) (additional citations omitted). Specifically, "*** all three [standardized] field sobriety tests need not be administered for any one test result, properly administered, to be admissible into evidence for consideration in determining probable cause for arrest." *State v. DeVault*, 6th Dist. Ottawa No. OT-12-027, 2013-Ohio-2942, ¶ 16, citing *State v. Markin*, 10th Dist. Franklin No. 01AP-1208, 149 Ohio App.3d 274, 2002-Ohio-4326, 776 N.E.2d 1163, ¶ 15 (emphases omitted). Furthermore, the three cases appellant relies upon at page 8 of his brief are unpersuasive, as we find they rely too heavily upon the superseded *Homan* rule concerning NHTSA standards.[2]

**{¶32}** Upon review, we find the record does not support appellant's claim that the HGN test was not in substantial compliance with the requisite standards, and in conjunction with the trooper's testimony and dashcam video regarding the additional testing, as well as the undisputed facts concerning appellant's condition during the events in question (odor of alcoholic beverage, glassy and bloodshot eyes, and admission to having recently consumed one beer), along with the presence of the SUV in the ditch, we hold the trial court correctly decided the trooper had probable cause to arrest appellant for OMVI.

---

[2]  *State v. Nickelson*, 6th Dist. Huron No. H-00-036, 2001 WL 1028878; *State v. Ryan*, 5th Dist. Licking No. 02-CA-00095, 2003-Ohio-2803; *State v. Verity*, 5th Dist. Stark No. 2009CA00156, 2010-Ohio-1151.

{¶33} Accordingly, appellant's sole Assignment of Error is overruled.

{¶34} For the reasons stated in the foregoing opinion, the judgment of the Municipal Court, Licking County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., and

Delaney, J., concur.


JWW/d 0624